Good morning, may it please the court. I'm Aaron Lang of Schwabie Williamson Wyatt here this morning on behalf of the appellants and the plaintiffs and I will just refer to them generally as Samson since there are about a dozen of them. I know the court is well prepared so I'm looking forward to your questions. So what I'm going to try to do is give you something a little bit beyond the briefing this morning, not raising new arguments of course, but just to try to add a little bit of nuance here and so there are a few points that I think are key here. First of all, it's always tempting on an appeal to launch right into what's wrong with the the trial court's decision. But I think sometimes helps you, your goal here is to convince us that the that the trial court erred in some way. That's correct, however in this instance that the trial court actually got almost everything right. The only question that the trial court didn't get right is the question of the ultimate question of liability and so what's it what I think is important for for kind of focusing the argument this morning is remember that the trial court correctly found that the means employed by the city here, these rolling moratoria, were unlawful as the Superior Court, the Washington State Superior Court, held as was affirmed in a published decision by the court. That doesn't necessarily mean that you've established a violation of your federal substantive due process right under the 14th Amendment. Well actually we disagree and we disagree for the simple reason. Under the law, property rights come are basically created by state law. They're an artifact of state law and one of the inherent parts of Washington state law as far as property rights go, the right to use and develop property, is our vested rights doctrine. And so in this instance and that that itself takes on a constitutional dimension as the Washington State Supreme Court well articulated in the West Main Associates v. Bellevue case and is reiterated in many many cases also the Michigan Springs case v. City of Spokane. And so when we're talking about the substantive and procedural due process rights that Washington property owners have vis-a-vis Washington's substantive law and permitting, which is again protected through the 5th and 14th Amendments, what we're talking about is a per se violation of those rights when you violate or interfere with the vested rights doctrine. If you do have a violation of state law that you know impacts the use of property, is that always a constitutional claim though? Well in some instances no, but in this instance we're talking about a specific specific artifact of Washington law which is frankly unique to Washington which we acknowledge in our brief, which is this vested rights doctrine. And what Washington law says, and this is our Washington State Supreme Court. I think we there's a violation of, you know, refusing to apply the law that, you know, was present at the time that permit was applied for. Even if there's a violation of that, does that always rise to a constitutional violation? Under the facts of this case it does because we don't just have merely a violation of the law, and I hate to even say merely because as I've learned being a land-use attorney and basically being an attorney in general, it's always bewildering to members of the public that the standard of conduct which the government has held is less than the standard of conduct to that the rest of us are held. And that apparently ignorance of the law is a defense in some level, at least in reaching that ultimate question. And so in this particular instance, not only were the rolling moratoria unlawful and to enforce them after they've been struck down. But it was unconstitutional under Washington's state's constitution, wasn't it? It was, and I want to be very clear, we are not really re-litigating the Biggers case this morning or as part of this, and the Biggers decision is basically striking down the moratoria. That question is settled. Was that under state constitutional law or was it under federal? It is, yes. The moratoria themselves were struck down as unconstitutional under the state constitution under the Whedon test, which looks at article 11, section 11 of the Washington state constitution. So every time a state act is struck down under state constitutional law, does that create a federal constitutional claim? Well, no. But on the facts that we're dealing with here, yes. Because we are dealing with property rights and we are dealing with property rights. So that was kind of, if you will, the fundamental error with the district court's reasoning. What the district court did is it correctly found that the moratoria were unlawful, but then it proceeded to look at the record to see if there was a rational basis or a legitimate reason for having the moratoria. That question had already been asked and answered. They were unlawful. It had been asked and answered under state law, and I'm not even sure to what extent because that opinion in Biggers is less than clear. But we're looking at federal law. Right. So what we have here, though. We're looking at the test for what amounts to a violation of substantive due process. And I guess I have a question along that lines as well, because under federal constitutional law, there needs to be a determination whether that interest, the property interest, rises to a level of legitimate claim of entitlement protected by the due process clause. And here we're talking about the vested rights doctrine, which from what I can understand gives Washington residents who apply for building permits a vested right to have their application processed according to the zoning and building ordinances prevailing at the time of the application. Here, your clients didn't apply. And so I know you're arguing that it's settled because the statute at stake was struck down for being unconstitutional. But there's a whole nother analysis that has to be done here under federal law. That is correct, Your Honor. But what I and this is again the problem with the district court's decision and the ultimate conclusion here is what we have here are per se unlawful, not just unlawful, but unconstitutional means that go to the very heart of the substantive and procedural due process protections afforded to property owners in Washington. Moratoriums on property development. Are you contending that those are always unconstitutional? Absolutely not, Your Honor. What I'm saying is that this one was and that what I'm this is sort of the analogy. It was unconstitutional because it was performed by a local in contrast to the state as a whole. The local jurisdiction did not have the authority to adopt this. Now what the Biggers decision, the ultimate plurality decision, because you look at the concurring decision and what the narrowest grounds for affirmance would be, so you look at the rationale there. And the rationale there was that they were unreasonable. And so that again the Whedon test for constitutionality which is looking at whether a local ordinance is in conflict with the general laws of the state and it's article 11 section 11 of our state constitution. It focuses, it asked three questions, the third of which is whether or not it was a reasonable exercise of the power. And in this instance, the the concurring decision by Tom Chambers, Justice Chambers, was that these were unreasonable. But again, going back to the beginning of my story, we have our unlawful means. Let me take you to kind of a big picture. We're not talking about fundamental rights, are we? Or a suspect classification? We are not talking about a suspect class. What we are talking about is a fundamental right to use and enjoy property. And you cannot use and enjoy property in this day and age without going through a permitting process. In Washington, the landowner and the person who would be seeking to use the property has a right under the vested rights doctrine to fix the rules that apply to their property to avoid fluctuating land use decisions. The West Main case is exactly on point here. In that case, the city of Bellevue tried to put a bunch of procedural hurdles before the applicant could actually vest to the rules and sort of fix the rules of the game. And whether those were well-intentioned or not, the Washington State Supreme Court held that it was a violation of Section 1983 to just try to interpose those hurdles before an applicant could vest. And that's precisely what's happened here. They have, using unlawful means, prevented the Sampson appellants from being able to vest. And that So unlawful means, so do I understand your argument to be that because it was declared unlawful under the state constitution, that is the rolling moratoria, that it necessarily was arbitrary and capricious under the federal constitution? That is correct. Is that the argument? That is precisely the argument. Because what possible legitimate interest, what possible rational interest could a government have in knowingly continuing to enforce and even reenact a law that has been struck down? Well, they adopted it. They believed they had the authority under the circumstances. Again, and this is the bewildering thing for the public, is ignorance of the law is no defense. Well, let me ask you this. Was there a case that said you can't adopt, when they adopted this moratorium, was there a court of appeal decision that said you cannot adopt moratoria in these kinds of situations? There was not, Your Honor. Was there a state statute that said that? There was not, Your Honor. However, the construction... They knew they had to, at some point, adopt a master, update their master plan, correct? Well, that was, as the Washington State Supreme Court correctly noted, that the inconvenient truth was their update wasn't due until 2011. There was some obligation they required at some point to do an update, right? That is correct. But again... So tell me, under those circumstances, why is it arbitrary to adopt this temporary, what started out to be a temporary measure? The arbitrariness was, and I guess the point of the court, and it's well taken, is that, well, they didn't know until the Superior Court struck them down as unlawful that they didn't have the authority to do that. There were a couple of indicia, though, that they should have been on notice. Number one, even under the Optional Municipal Code and the state statutes that allowed for local jurisdictions to adopt some development moratoria, they still could have only done a moratorium, at most, for two years. By the time that the District Court had... Or, pardon me, the Superior Court had struck them down in June of 2003, they were going on two years. So even at that point, they're well on notice. One of the other things that's... They then got... They were able to get a... They applied for a stay? Is that correct? Correct. And they got a stay. One of the things that I... I'll offer an apology to the court in kind of preparing for my argument, rereading the briefs, I came away with the sense that we should have brought the stay to the court's attention earlier in the brief. I hope that didn't create any misimpression in the court. It's pretty clear that they got a stay. But remember, a stay is not absolution. Just because somebody appeals and exercises their right to file an appeal, it does not cure the underlying wrongful act. And so what they did at that point is, at least, at least, as of June 2003, they knew that the moratoria were unlawful. They proceeded to... They continued to administratively enforce them, knowing that they were unlawful, for the purpose of denying our clients their ability to vest applications. And following that, they reenacted the moratoria. They may have narrowed it, so they focused only on our clients at that point, but they nevertheless reenacted the moratorium. In the face of the final adoption, the final ordinance, they even acknowledged that they'd been held to be unconstitutional, and that they had filed a stay. They gambled. That's only by one court. They hadn't even, at that point in time, been through the Court of Appeals, had they? In fact, the case that you cite, I guess, for that proposition, in that case, the city council or the municipality involved was getting warned by their manager or their lawyer, saying, this is wrong, you're not gonna win. Here, it was the opposite. Their lawyer manager was saying, no, I think you're right, so you can go ahead and continue. Because they got the stay, so how does that make it... I respectfully disagree, Your Honor. The court had said... I believe that each of you may have, at some point, served as a trial court judge, and it has to be very bewildering to a trial court judge to issue a ruling like this, and then look back and say, well, it's fine, they've got the right to appeal, but that doesn't change what the ruling was, unless they win. And they didn't. They lost twice more. No, I think you've got that wrong. I mean, not when a stay... Your statement's true if there's no stay issued, but if there's a stay issued by its own filing, stops the implementation of the trial court's decision. That is correct, but it does not change whether or not the trial court was correct in its ruling, and in this instance... Trial courts always think they were correct. They don't... Well, I would hope so. But again, and this issue, by the way, of a stay was addressed in the Norco decision, which says, yes, they've got the right to file a stay, but damages are still accruing. The harm doesn't stop. The only way that they get absolution is if they overturn the decision and they fail to do so. And kind of on the bigger question, don't they have some public interest or right to control the shoreline or the issuance of these docks or so forth, especially when you get kind of a vested right? In a lawful manner, that is correct, Your Honor, but that lawful process, and this was the side, is to allow people to submit an application and then go through the permitting process and have all of those substantive laws applied fairly and... Well, the practical effect in this case would be that if you had applied any regulation... Say 1,000 shoreline owners had applied during the same period of time, and they came out then with later regulations that restricted the development of docks, they wouldn't have any ability to control that, would they? You're talking about the city? Had they had 1,000 shoreline owners hypothetically vested applications, they wouldn't have an ability to control that? That's correct, but... If they have a public interest in kind of maintaining the shoreline or the health and welfare associated with that, that would all be lost, wouldn't it? Well, I mean, again, Your Honor, these are hypothetical questions. What we're looking at, in fact, if you look at the face of the ordinances, they initially predict that they might get somewhere like 14 of these applications, and then without explanation, they pop it up to 34, although they're not just talking about dock permits. Let me ask you something that always struck me. How would you ever prove... Assuming you had a violation of your substantive due process rights, what are the damages here? Because they could have denied the application on any other ground. It's a wonderful question, Your Honor, and that's exactly the question that I believe that our clients are entitled to have the jury decide. This was... We only got to liability here. I have about three minutes left, and I'd like to reserve some time, but again, and I just... Just very quickly to address it, it's a good question, but this is the problem. We can't just... the significance of the city's actions here, especially after the trial court's rulings, because they've set up this strongman about dock permits. I mean, in the employment context, we'd say, okay, well, somebody who works at McDonald's, eh, it's not as good a job as the executive at Microsoft. We can't look at it like that. We'd love to get to the jury and show what the damages are. You're right. I'm sorry. You're right about what you say, but you have to show that the government body's actions here were clearly arbitrary, and I think that means that they had no legitimate reason for its decision, and whether the government acted arbitrarily or capriciously is at least... If it's at least debatable, I don't know that you'd get there, and so I'm not sure how you get there. I do not believe that there is any question that is arbitrary, capricious, and unreasonable to continue to enforce and even reenact an unlawful law, and I really... That's after the Superior Court judgment. You can... I just don't want to use all my time right now. That's fine. That's fine. Thank you. Good morning. May it please the Court. Mike Walter. I'm here on behalf of the appellee, City of Bainbridge Island. Your Honors addressed a whole bunch of issues that I was going to address. You asked great questions, and I will try to supplement and expand on some of the answers that counsel provided to you. I'd like to make a couple of kind of preliminary points. I think you've... The panels already identify a lot of important and key issues here. To get to the fundamental issues that are before this Court, and that is, have the plaintiffs, through their reliance solely on the bigger Supreme Court case, met their heavy burden of proving a substantive or procedural due process violation here. That's the issue before this Court. Counsel is right. We're not here to re-litigate Biggers, and your Honors are correct that the Biggers decision is not a model of clarity. Unfortunately, we got a 4-1-4 plurality decision, but it is the City's position that that plurality decision actually supports the City's argument and at best, or at worst, defeats plaintiffs' substantive and procedural due process claims. Because that plurality decision, at least five of the justices found that there was a right to adopt shoreline moratoria in Washington State under state law. And that's the four dissenters in Justice Chambers. And he makes that very clear. Where Justice Chambers diverged was based on his belief, which he had a right to explain in the decision, that the moratoria went on too long. That was his opinion. He was entitled to it. It's our position that that is just pure dicta. But in any event, the fact that four or five justices supported the City and believed that the City had lawful authority to adopt shoreline moratoria here, defeats the appellant's arguments that they are entitled to damages under Section 1983 for a due process violation because they cannot meet their heavy burden. And that phrase, heavy burden, comes from at least four Ninth Circuit decisions on substantive and procedural due process. It is a heavy burden to show that the irrationally, and they use various phrases, the Matsuna case and a few others actually require that there be some evidence of conscience-shocking activity or decision-making. I just submit that no matter how you slice the Biggers case here, that that decision cannot be construed to in any way support or satisfy plaintiffs' heavy burden. Under our analysis, why don't you, can you address, why doesn't the Vesting Rights Doctrine give the Sampsons a protectable property interest in having their permit applications reviewed under existing law? Okay, good question, Your Honor. So I'll answer that in a couple of ways. First and foremost, it's our position that the Vesting Doctrine is not even triggered and is not even applicable in this case. And I think Your Honor raised that issue early on when you cited correctly to what vesting means. Vesting applies when an applicant submits a fully complete application for some kind of land use or permit. Here, it is undisputed, unrefuted, that none of these either a building permit application or a shoreline substantial development permit application. So … I think there was one of the, one of the plaintiffs offered a declaration that they attempted to. Exactly. I think that was Kelly Sampson. And Judge Bryan, I think, appropriately addressed that in his decision. It was pure speculation. He claims that he tried it to or asked to or intended to submit an application. There is no record of any application ever being submitted. He has not offered one. There's nothing in his declaration to support that other than his statement that, I went to the city and wanted to, or told them I wanted to submit an application. They told me I couldn't and he walked away. The city has reviewed its records. There are three planners at the city. He has scoured the city's records. There's no record of any application by Kelly Sampson. There was one application by the hackers that was submitted before the moratoria went into effect. I believe it was sometime in early 2001 to extend their dock, not to build a new one, but to extend the existing dock. They withdrew that application about a year later after there was a lot of public opposition to the dock extension proposal. So, but, but that, that permit application was submitted before the moratoria. And is it your position that they would have had to make the application for the vesting rights doctrine to give them the property interest here? Yes, it is, Your Honor. Because under Washington law, if you look at the vesting statutes, and there are, vesting comes in kind of two forms in Washington State. It's common law vesting, which applies to kind of a broad range of permits, and then two forms of statutory vesting for preliminary plats, that's under RCW 58.17033, and then for, and that's not at issue here, and building permits, and that's under the building code, it's RCW 19.27095. Under any of those, case law or the statutes, you need to submit a fully completed application. It's got to be submitted to the jurisdiction. There's no evidence that here. So, to get back to your good question, we believe that vesting simply isn't even triggered here. However, even if they could show that there was an application submitted, what, what is, what they failed to address here is the purpose and need for moratoria. We've cited a number of cases, starting with the Tahoe Sierra case, the U.S. Supreme Court decision, as well as two, I think, very much on point state court decisions, the Jablinski versus Snohomish County case, and also the Mattson versus Clark County case. Both of those state court decisions very clearly and very expressly hold that the purpose of moratoria are to prevent vesting. And so, when council talks and their briefing talks about how the city's attempt at these moratoria, use of these moratoria, denied them vested rights or their ability to submit fully completed applications, they are correct. And the courts, going back 20 and 30 years, have recognized the right of government to adopt moratoria as good, sound planning tools. And, and do these other cases, do they support imposing this moratoria on emergency basis with no public notice? Absolutely. And I can quote both of them. If you want to look at two key cases, the Jablinski versus Snohomish County case and the Mattson versus Clark County case, both of them very explicitly, and I can find the sites if you want them, explicitly say that cities have authority to adopt emergency moratoria without notice, without a public hearing, and the purpose of that is purposely to defeat or deny that the doctrine, even if applicable, is not absolute. The courts have made a conscious decision, both state courts, federal courts, and the U.S. Supreme Court, that vesting can be and should be set aside or given a second place when the need for a moratoria is decided or used. And, and that was a legislative decision here. What we are talking about is, this isn't a permit decision. We're not talking here about a quasi-judicial or ministerial type of permit decision where the city kind of arbitrarily says, you know, we're not going to give you the permit or we're not going to process your application. What is at issue here are legislative decisions made by the city council based on public comment and need to update their shoreline master plan. And council only gave you part of the story. If you want to see, and we've cited some of this in our briefing, but take a look at just one or two of the moratoria ordinances. The second and third versions in particular cite a laundry list of reasons and rationale for those decisions, for those moratoria. Let's say it does rise to a legitimate claim of entitlement protected by the due process. Can you discuss how what happened here was not clearly arbitrary but specifically respond to opposing council argument that proceeding to impose more moratoriums after the state court decision, why doesn't that? Okay, good question. And let me kind of back up because some of you folks already kind of touched on this and you asked some good questions, but I'll back up. First and foremost, you know, council is saying, gee, we need to use 2020 hindsight and go back now and say the city should have known three or four years later that the state supreme court was going to, in a 4-1-4 split decision, find that they ultimately couldn't adopt or shouldn't have adopted the moratoria here. That's not the proper test. The test is to look at the status at the time the legislative body, the city council, was adopting and renewing each of these moratoria. And at that time, as your honors heard, and I'll confirm it, there was no case law, there was no statute, there was no legal authority anywhere saying that cities could not adopt moratoria to prevent development in shorelines. It did not exist. Secondly, the city council relied on not one but two different city attorney opinions saying that they have the authority to do this. That fact alone distinguishes the Mission Springs case, which they rely on. And that case is distinguishable for other reasons that involved a ministerial permit. But so let me kind of get to your question, and that is, you know, why wouldn't this be just deemed arbitrary and capricious? Well, first of all, I will not admit here that that is in fact the test. If you look at the Matsuna case and a couple of other cases we have cited in our materials under substantive due process, the Ninth Circuit has recognized a fact that shocks the conscience test, or an utterly irrational test. So something beyond simply arbitrary and capricious to support a substantive due process claim. And I submit that the facts here under the most generous interpretation of the appellants don't give rise to that. But assuming you want to assume that arbitrary and capricious is the appropriate standard to use here, and I'll just do that for purposes of argument here. Arbitrary and capricious means that it is a willful and unreasoning action without any legitimate basis in fact or in law. And under that test, and we've cited a plethora of cases in our brief to support that and to give the court kind of a road map of what the law is and how arbitrary and capricious is interpreted. Where there is a dispute over the facts or where a court reaches a contrary decision to a government, that action is not arbitrary and capricious. Where there's a difference in opinion or where the law is unsettled, that is not arbitrary and capricious. And here I submit that's exactly what we've got. When this case went up to the state, the Biggers went up to the state Supreme Court, there was no legal authority anywhere discussing the authority of cities to adopt shoreline moratorium. There's a reason the state Supreme Court accepted the petition for review of the Biggers case. They found an important issue there. Also, to get to your question again, we have five justices of the state Supreme Court that agreed with the city's position that cities do have authority to impose moratoria on shoreline development. So we have four dissenters and Justice Chambers agreed with that. There were seven amicus, different organizations supporting the city's position. And there are two law review commentators that we've cited in our materials that support the city's position and the city's interpretation of the Biggers case. When you add all of that up, plus the fact that there was no law prohibiting what the city did at that time, at worst for the city, what you've got is a dispute over the city. To accept plaintiff's argument here, the appellant's argument here, you'd have to basically ignore five justices' decision in the Biggers case and say they don't mean anything. So his last part of his argument, of counsel's argument, was that, well, okay, fine and dandy, but after the Supreme Court judge held that the moratoria was unlawful, went ahead and got your stay and continued to press on with implementing a new version, tailored a bit more, but you still continued on. And the Superior Court judge, his decision may have been... Implementation of his decision may have been stayed, but at least somebody thought what you were doing was unlawful under Washington law. Well, certainly they thought what we were doing was unlawful, Your Honor. No, at least the Superior Court judge did, right? True, true. And so did Division 2. I agree with it, absolutely. The point is, though, if you look at the broad deference given to local government to make legislative decisions, which is what we're talking about here, in the context of the arbitrary and capricious standard, assuming you wanna use that standard for purposes of the analysis here... I think it's a fair assumption. Okay. All right. Well, I'll give you that, Your Honor. But even under that lower standard, the fact that you've got... And there's a plethora of case law we've cited in our brief to support this, where a court disagrees with a legislative decision of local government. That decision is not arbitrary and capricious. Again, the test is, is it willful, unreasoning, and without any legal or factual support? That's the test. Let me ask you, when you adopted the new version after the Superior Court judge's judgment, did you... Did the new version take into account any of the concerns that he expressed in his judgment? No, and I'll tell you why. The very narrow issue that was before Judge Costello in the Biggers case was literally whether the city of Bainbridge Island or any other city had legal authority under state law to impose a shoreline moratorium, or a moratorium on shoreline development. Under that narrow issue, and the plaintiffs have conceded that that's what their briefing was all about, there was no way for the city to, quote, comply with Judge Costello's order without just giving up their right to appeal that. And the But, but I want to, you know, add again, at, at the time, you know, if the test is now going to be any time a trial court invalidates a piece of legislation, or second guesses a legislative body on discretionary decision making, and from that point on, the city runs the risk of Section 1983 damages liability, that is going to have a huge chilling effect on local government and state government decision making, for that matter. In this case, the city properly exercised its right to appeal that decision, as would any other party. What's, what's, what was the effect of, in your, in your opinion or argument, what, what was the effect of the stay? How did that, how did that fit, how does that fit into this analysis? Well, it preserved the status quo so that the city could continue to enforce and keep in place the until either the stay was lifted, or there'd been a resolution, or the moratoria had been lifted. So was that a discretionary stay, or was it an automatic stay? I know it was a discretionary, well, I believe it was a discretionary stay. It was requested by the city of both the trial court judge, Judge Costello, and also of the Court of Appeals, Division 2. And I, I believe both of them issued separate stay orders, because I know the city made a request to both, and I wasn't involved in that, but I believe that both levels of court were asked to impose and did impose a stay. And so that's what the stay does. And, and that stay is a, you know, right that any appellant or appealing party has. The city is entitled to utilize that, and it did. And so, for these folks to come back and say, well, years later we're going to second guess that, you should have known that the state supreme court three years later was going to issue a split opinion that in some ways may have invalidated or upheld the invalidation of the moratoria, is, is literally going to have a chilling effect on local government. They're going to, you know, any time they lose at the trial court level, the analysis is going to have to be, geez, if we pursue this and we don't ultimately win, we're tagged for section 1983 liability for a substantive or procedural due process case. And I believe, your honors, that is why the supreme court and this circuit particularly have made it very, very difficult for land use applicants in particular to sue for section 1983 damages for a substantive or procedural due process violation. And that's why they're, you know, they use words like utterly irrational or shocking the conscience. They want to make sure that every single decision that government makes, particularly when you're talking to legislative decisions, doesn't automatically turn into a damages case. And particularly where federal courts like this court are being asked to be the ultimate zoning boards of legislative decisions. So, um, you're almost out of time. I think I am. Do you have any other questions? Thank you very much. Thank you. Thank you, your honors. So the city raises a couple of points here that I think kind of boil this entire thing down. First of all, the city says, well, you don't have a vested right until you submit an application. But of course, in the context of this case, that's pretty circular since they had imposed a moratorium on applications and their planning director, who had been there 40 years, said we were refusing applications. And in fact, I believe there's reference to the record where the two applications were submitted. They put them in a FedEx envelope and sent them back. But people had applied prior to the moratorium being imposed. And when this was being discussed, hadn't they? There was apparently a revision to an existing doc. But again, the point is, the moratorium prevented vesting. Our Washington State Supreme Court in the West Main decision says, in its letter of opinion, the court concluded, that's interfered with the vesting doctrine and suggested that the ordinance violated due process requirements. We agree with the trial court. And in that case, the city withdrew the offending ordinance as soon as the trial court issued its ruling. And the Washington State Supreme Court still held that the city of Bellevue was liable under Section 1983. Two other things. If we can say that the you ignore the advice of legal counsel, you do so at your own peril, and that can make an action arbitrary and capricious. Well, what happens if legal counsel was wrong and the courts find that actually the city was correct? No foul. Well, if you apply the same rationale here, if you ignore the trial court, and it turns out the trial court was correct, on your mission springs and bates in, you should be liable. Was the issue quite limited to the trial court, just as to whether the city had authority under state constitution and laws to regulate the shoreline at all? The order is actually in the materials. And the original lawsuit included several claims, but the ruling itself only addressed the authority for the city to enact the moratorium. And the that the city lacked that authority. And again, it was applying the Whedon test. But again, here what we have, at a minimum, is a nearly three-year moratorium. And I have to respond to one of the factual questions, because, Your Honor, Judge Pius, you asked the question about, well, did the city do anything in that final enactment? Well, it did. When we started this process back in August of 2001, that initial emergency moratorium, it was just Blakely Harbor, which is three and a half miles of the city's roughly 50 miles of shoreline, and it was just new docks and piers. All of a sudden, it becomes island-wide. It applies to everything. And then after the trial court rules, it's just Blakely Harbor, and it's just new docks and piers. And what's interesting, and I think the ordinances, and I'd encourage you to look at them, they tell the story, because they start out kind of simple with this one thing, and they end up in the same place, and they end up doing a limited amendment to ban private single-use docks. They still allowed for community docks and other docks in there. But what they did in the intervening time was they employed an improper means, and they continued to employ that improper means after the trial court instructed them. All right. We got it. Thank you. You're over your time, and I appreciate your argument. We all appreciate your arguments. Thank you, counsel. And the matter is submitted, and that ends our session for today.
judges: Gwin, Paez, Murguia